IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN DEPAULA,

      Plaintiff,

v.                                      No. 14-CV-252 MCA/SCY

EASTER SEALS EL MIRADOR,
a corporation,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendant Easter Seals El Mirador's Motion to Dismiss and Supporting Memorandum of Law*. [Doc. 22] The Court has considered the parties' submissions, the relevant law, and has otherwise been fully advised in the premises.

## BACKGROUND

In this lawsuit, Plaintiff John DePaula brings various tort and employment discrimination claims. [Doc. 21, ¶¶ 67-170] For purposes of ruling on the present *Motion to Dismiss*, the Court need only briefly set out the alleged facts pertinent to one of Plaintiff's claims: his claim under the New Mexico Human Rights Act (NMHRA) of discrimination based on association with a person with a disability. [Doc. 21, ¶¶ 108-16] Plaintiff alleges that he worked for Defendant for over 21 years. [Doc. 21, ¶ 3] Plaintiff alleges that he associated with another employee of Defendant's who had the serious medical condition of cancer and Plaintiff complained about the unfair treatment of that

1

employee.  [Doc. 21, ¶ 4]  Plaintiff also alleges that he associated with his elderly parents

who are disabled and have serious medical conditions.  [Doc. 21, ¶ 5]  Plaintiff's mother

was diagnosed with dementia, and Plaintiff applied for and took "family medical leave

and/or accrued leave[,]" but his position was eliminated and he was terminated before

returning to work.  [Doc. 21, ¶ 6]

Plaintiff filed a charge of discrimination with the New Mexico Human Rights

Bureau (hereafter HRB or HRC) on March 15, 2013, and an amended charge on April 24,

2013.  [Doc. 22, ¶¶ 10-11]  On November 8, 2013, the HRB issued a *Determination of*

*Probable Cause/No Probable Cause*.  [Doc. 22-2] The HRB found no probable cause

existed on Plaintiff's claims of discrimination on the basis of gender and age and on his

claim of retaliation.  [Doc. 21, ¶ 15, Doc. 22-2, p. 4]  As to the Determination of No

Probable Cause, the HRB stated:

> You may obtain judicial review of this Determination of No Probable
> Cause by filing a notice of appeal in the form of a complaint with the
> District Court[.] . . . The notice of appeal must be filed within ninety (90)
> days of the date of service of this Determination and in accordance with
> NMSA 1978, §28-1-13 of the New Mexico Human Rights Act and Rule 1-
> 076 NMRA of the Rules of Civil Procedure for the District Courts.
> . . .
> IF YOU DO NOT FILE A NOTICE OF APPEAL WITH THE
> APPROPRIATE DISTRICT COURT WITHIN NINETY DAYS OF
> SERVICE ON YOU OF THIS DETERMINATION AND PROPERLY
> SERVE THE NOTICE OF APPEAL, AS REQUIRED BY § 28-1-13,
> YOUR NOTICE OF APPEAL MAY NOT BE CONSIDERED BY THE
> COURT.
> . . .
> IF YOU INTEND TO APPEAL, YOU MUST DO SO WITHIN 90 DAYS
> FROM RECEIPT OF THIS DETERMINATION, EVEN IF YOU
> REQUEST A REVIEW BY THE EEOC.

[Doc. 22-2, pp. 4-5]

The HRB further determined that there was probable cause to support Plaintiff's charge of discrimination "on the basis of disability (association with a person with a disability)" and set a hearing on the case.  [Doc. 21, ¶ 12; Doc. 22-2, p. 4]  As to the determination of probable cause, the HRB stated:

> Pursuant to Section 28-1-10 (J) of the Human Rights Act, you have the right to request a waiver of right to hearing. . . .  Notice of the waiver will be served upon the Complainant and Respondent.  The complainant may request a trial de novo pursuant to Section 28-1-13, NMSA 1978 within ninety days from the date of service of the waiver.

[Doc. 22-2, p. 4]  Plaintiff waived his right to a hearing before the HRB, and, on January 15, 2014, the HRB issued its Notice of Waiver of Hearing and informed Plaintiff of his right to pursue his disability association discrimination charge in Court.  [Doc. 21, ¶ 14]

Under New Mexico law, a "person aggrieved by an order" of the HRB has "ninety days from the date of service" of the Order issued by the HRB to appeal to the district court.  N.M.S.A. 1978, § 28-1-13(A) (2005).  On February 12, 2014, ninety-six days from the date of the HRB's *Determination of Probable/No Probable Cause* but exactly ninety days[1] from Plaintiff's receipt of the *Determination* [Doc. 47-1],  Plaintiff filed

---

[1] Plaintiff relies on both the Return Receipt and a printout from the United States Postal Service's Tracking tool available on the internet to establish the date the HRD's *Determination* was delivered to his mailing address.  Though Plaintiff submits that the package was received on November 15, 2013 (eighty-nine days prior to when he filed suit) [Doc. 47, pp. 2, 4; Doc. 47-1, pp. 1-2, ¶¶ 4, 6], the Court disagrees.  Plaintiff takes this information from the USPS's "Updated Delivery Day," which the USPS states "is the latest information on when the Postal Service expects to deliver your package." *Available at https://tools.usps.com/go/TrackConfirmAction!input.action* by entering the Return Receipt number and viewing the "?" button after the "Updated Delivery Day." The USPS Tracking printout indicates the *Determination* was actually delivered on November 14, 2013.  Thus, the *Determination* was delivered ninety days before Plaintiff filed suit.

with the First Judicial District Court, County of Santa Fe, New Mexico, a *Complaint for Damages for Violations of the New Mexico Human Rights Act, Wrongful/Retaliatory Discharge, Breach of Covenant of Good Faith and Fair Dealing, Negligent Retention and Supervision, Intentional Interference with Business Relations and Prima Facie Tort.* [Doc. 1, p. 4]  Defendant removed the lawsuit to this Court.  [Doc. 1]  Plaintiff then filed his *First Amended Complaint for Damages for Violations of Title VII, ADEA, ADA, FMLA, the New Mexico Human Rights Act, Wrongful/Retaliatory Discharge, Breach of Covenant of Good Faith and Fair Dealing, Negligent Retention and Supervision, Intentional Interference with Business Relations and Prima Facie Tort.* [Doc. 21]

Defendant moves to dismiss Plaintiff's New Mexico Human Rights claim for association with a person with a disability on the ground that such a claim is not recognized by the New Mexico Human Rights Act (NMHRA).  [Doc. 22, pp. 1, 6-7]

Defendant also moves to dismiss Plaintiff's claims under the NMRHA for gender discrimination, age discrimination, retaliation and wrongful/retaliatory discharge on the ground that Plaintiff did not timely file his appeal of the determination of the HRB.  [Doc. 22, pp. 1, 3-6]  With regard to this second argument only, the Court converted the Motion to Dismiss into a Motion for Summary Judgment because both parties submitted documentation outside the pleadings for the Court to consider.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  [Doc. 43]  The parties were given the

4

opportunity to submit additional evidence and arguments on the motion.  [Doc. 43]  The

Court has now been fully advised on the matter.

**ANALYSIS**

As an initial matter, Plaintiff submits that Defendant's Motion to dismiss is

untimely because Federal Rule of Civil Procedure 12(b) states:  "[a] motion asserting any

of these defenses must be made before pleading if a responsive pleading is allowed.  If a

pleading sets out a claim for relief that does not require a responsive pleading, an

opposing party may assert at trial any defense to that claim."  [Doc. 26, p. 7]  Plaintiff's

argument, however, overlooks Federal Rule of Civil Procedure 12(h)(2), which allows a

motion for "[f]ailure to state a claim upon which relief can be granted. . . [to] be raised:

(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule

12(c) [Motion for Judgment on the Pleadings]; or (C) at trial."  *Accord Arbaugh v. Y&H*

*Corp.*, 546 U.S. 500, 507 (2006) (stating that a 12(b)(6) motion "endures up to, but not

beyond, trial"); *see also Albers v. Bd. Of Cnty Comm'rs of Jefferson Cnty, Colo.*, 771

F.3d 697, 702-03 (10th Cir. 2014) (discussing the relationship between Fed. R. Civ. P.

12(b)(6), 12(h) and 12(g)).  Thus, Defendant did not waive its 12(b)(6) argument.  *Enter.*

*Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel*, 883 F.2d 890, 893 n.2 (10th Cir. 1989)

(citing the advisory committee's note to Rule 12(h) which states that a Rule 12(b)(6)

defense is "expressly preserved against waiver").

### *The Statutory Deadline to file Plaintiff's Claims*

Defendant's argument that Plaintiff failed to file his claims within the statutory

deadline requires the Court to predict how the New Mexico Supreme Court would rule on

the question.  *See Safeco Ins. Co. of Am. v. Hilderbrand*, 602 F.3d 1159, 1163 (10th Cir.

2010).

> When the highest court of a state whose law is being applied . . . has not
> decided the issue presented, [the Court] must determine what decision the
> [state Supreme C]ourt would make if faced with the same facts and
> circumstances.  In making that determination, [the Court] may consider a
> number of authorities, including analogous decisions by the state Supreme
> Court, the decisions of the lower courts in the state, the decisions of the
> federal courts and of other state courts, and the general weight and trend of
> authority.

*MidAm. Constr. Mgmt., Inc., v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir.

2006) (internal quotation marks and citation omitted).  "An intermediate state court in

declaring and applying the state law is acting as an organ of the State and its

determination, in the absence of more convincing evidence of what the state law is,

should be followed by a federal court in deciding a state question."  *Fid. Union Trust Co*

*v. Field*, 311 U.S. 169, 177-78 (1940); *see also Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d

1569, 1574 (10th Cir. 1984) ("This court must also follow any intermediate state court

decision unless other authority convinces us that the state supreme court would decide

otherwise.").

 First, the Court notes that with regard to Plaintiff's claim of disability association

discrimination, Plaintiff had ninety days from the date of the HRB's issuance of its

Notice of Waiver of Hearing on January 15, 2014 to file suit.  N.M.S.A. 1978, § 28-1-

10(J) (2005) ("The complainant may request a trial de novo pursuant to Section 28-1-13

NMSA 1978 within ninety days from the date of service of the waiver.").  Thus, Plaintiff

timely filed his claim for disability association discrimination, and Defendant does not

request this Court to conclude otherwise.   As to the remainder of Plaintiff's claims

brought under the NMHRA, the New Mexico Supreme Court has not addressed the issue.

Two other Courts presented with this issue have reached opposite conclusions.   My

colleague, the Honorable James Browning of this District Court, in 2009, predicted that

the New Mexico Supreme Court would conclude that "service" is effected on the date of

mailing, not on the date of receipt, of a right to sue from the New Mexico HRB.  *Vigil v.*

*City of Espanola*, No. 1:08-cv-00980JB-RLP, Doc. 25, (D.N.M. Feb. 18, 2009) 2009 WL

1300746, *10-12.   He reached this conclusion by considering, among other things, that

under the New Mexico Rules of Civil Procedure, service by mail is effected as of the date

of mailing, and he concluded that the New Mexico Legislature's use of the word

"service" in Section 28-1-13(A) was meant to apply the definition of service in the New

Mexico Rules of Procedure.  *Vigil,* 2009 WL 1300746, *10-12, *citing* NMRA 1-076,

NMRA 1-005(B).  Judge Browning also looked at various policy reasons for concluding

that service is effected at the time of mailing, including:

> There is good reason to find that, generally, proper service is determined
> with reference to the actions of the party wishing to carry out service rather
> than to the actions of the receiving party. . . .  It would be unfair to place the
> burden of proving proper service on a party, but leave the other party
> unlimited ability to deny receipt of service.

*Id.* at *12.    While Judge Browning considered that the language in the HRB's

determination states that the appeal must be filed within ninety days of "RECEIPT" of

the notice, he concluded this was merely the HRB's interpretation of Section 28-1-

13(A).[2] *Id.* at \*13.  Finally, he declined to apply the doctrine of equitable estoppel based

on the purported misrepresentation by the HRB.  *Id.* at \*14.

  After *Vigil* was decided, the New Mexico Court of Appeals, in an unpublished

decision, concluded that, even if service means date of mailing, "evidence that the HRC

misinformed [the plaintiff] that he had ninety days from receipt of the letter to file his

notice of appeal" was "sufficient to preclude summary judgment."  *Downer v. New

Mexico Corr. Dep't*, No. 30,602, slip op. at 4 (N.M. Ct. App. Dec. 29, 2010).  [Doc. 26-1,

p. 6]  Though the New Mexico Court of Appeals' reasoning is brief, nevertheless, this

Court believes that the *Downer* decision is a reasonable interpretation of a New Mexico

statute.  Thus, under these circumstances, and because this Court should follow the

decision of an intermediate state court absent "more convincing evidence of what the

state law is[,]" *Field*, 311 U.S. at 177-78, the Court concludes that it must follow

*Downer*.  The Court recognizes that *Downer* is an unpublished decision and is thus

afforded "no precedential value."  *Winrock Inn Co. v. Prudential Ins. Co.*, 928 P.2d 947,

954 (N.M. Ct. App. 1996).  Nonetheless, the Court believes *Downer*, decided after *Vigil*,

is the best indication of how the New Mexico Supreme Court would decide the matter.

*Field,* 311 U.S. at 177-78.  Here, Plaintiff submitted evidence that he filed suit exactly

---

[2] The HRB's regulations state that, if the HRB determines there is no probable cause,
"[t]he complainant will be notified by certified mail, return receipt requested, and the
respondent will be notified by regular mail.  Upon dismissing the complaint, the director
will advise the complainant of his or her right to appeal the determination in district court
within 30 days [the former statutory deadline] after *receipt* of the determination."
9.1.1.10.C NMAC (emphasis added).

ninety days after receipt of the HRD's determination.[3]  [Doc. 47-1]  Thus, the Court holds

that Plaintiff's lawsuit was timely filed.

### Whether the NMHRA forbids Association Discrimination

The final argument Defendant brings is that the NMHRA does not forbid

discrimination based on an employee's association with a person with a disability, and

therefore this claim should be dismissed.  [Doc. 22, pp. 6-7]  The New Mexico Supreme

Court has not addressed whether the NMHRA forbids association discrimination.

Defendant correctly argues that there is no language in the NMHRA expressly forbidding

discrimination based on association with a person with a disability, in contrast to express

language in the Americans with Disabilities Act (ADA) forbidding discrimination against

an employee based on "the known disability of an individual with whom the qualified

individual is known to have a relationship or association."  42 U.S.C. § 12112(b)(4).

[Doc. 22, pp. 6-7]  Plaintiff responds that the New Mexico Supreme Court has looked to

the ADA in interpreting the NMHRA's prohibition against disability discrimination, and

thus the New Mexico Supreme Court would determine that disability association

discrimination is forbidden under the NMHRA as it is under the ADA.  [Doc. 26, p. 8]

Plaintiff also points out that the HRB determined that there was probable cause to support

Plaintiff's claim of disability association discrimination.  [Doc. 26, p. 8]

---

[3] Plaintiff submitted documentation showing a return receipt, and the tracking records of that return receipt, to establish the date the HRD's determination was delivered to his mailing address.  [Doc. 47-1, pp. 4-5]  The Court notes that the requirement under the HRD's regulations for mailing with return receipt requested alleviates the concern raised by Judge Browning of leaving the receiving party "unlimited ability to deny receipt of service." *Vigil*, 2009 WL 1300746, * 12.

Again, there is no binding New Mexico Supreme Court precedent, and thus the

Court must predict how the New Mexico Supreme Court would decide this issue.  *See*

*MidAm. Constr. Mgmt., Inc.*, 436 F.3d at 1262 (stating the standard for predicting how

the highest state court would decide an issue).

The New Mexico Human Rights Act, in pertinent part, states:

It is an unlawful discriminatory practice for:
A. an employer, unless based on a bona fide occupational qualification or
other statutory prohibition, to refuse to hire, to discharge, to promote or
demote or to discriminate in matters of compensation, terms, conditions or
privileges of employment against any person otherwise qualified *because of*
race, age, religion, color, national origin, ancestry, sex, *physical or mental
handicap or serious medical condition*[.]

N.M.S.A. 1978, § 28-1-7(A) (emphasis added).   The NMHRA has prohibited

discrimination "because of . . . physical or mental handicap" since 1973, significantly

prior to the enactment of the Americans with Disabilities Act in 1990.[4]  1973 N.M. Laws

534-35.  As the New Mexico Supreme Court has pointed out, the language of Section 28-

1-7 generally "tracks the language of the federal Civil Rights Act," *Ocana v. American*

*Furniture Company*, 91 P.3d 58, 69 (N.M. 2004), and thus the New Mexico Supreme

Court has generally "look[ed] at federal civil rights adjudication for guidance in

interpreting the NMHRA." *Id.* at 68.  The language does not similarly track the language

of the ADA.[5]  Thus, the Court will first consider whether Title VII of the Civil Rights Act

---

[4]  The NMHRA's protection against discrimination because of a "medical condition" was
enacted in 1987 and that language was modified to "serious medical condition" in 1995.
N.M.S.A. 1978, § 28-1-7(A) (1987); N.M.S.A. 1978, § 28-1-7(A) (1995).
[5] There are significant textual differences with regard to the NMHRA's definition of an
"unlawful discriminatory practice[,]" Section 28-1-7, and the ADA's definition of
"discriminate against a qualified individual on the basis of disability[,]" ADA, 42 U.S.C.

§ 12112(a).  Other than separately forbidding employers from failing "to accommodate a person's physical or mental handicap or serious medical condition, unless such accommodation is unreasonable or an undue hardship," Section 28-1-7(J), the NMHRA does not enumerate specific means of discriminating "because of . . . physical or mental handicap or serious medical condition."   Section 28-1-7(A).   The ADA, however, is specific:

> As used in subsection (a) of this section, the term "discriminate against a qualified individual on the basis of disability" includes--
> (1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee *because of the disability of such applicant or employee*;
> (2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or *employee with a disability* to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);
> . . .
> (4) excluding or otherwise denying equal jobs or benefits to a qualified individual *because of the known disability of an individual with whom the qualified individual is known to have a relationship or association*;
> (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified *individual with a disability who is an applicant or employee*, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or
> (B) denying employment opportunities to *a job applicant or employee who is an otherwise qualified individual with a disability*, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant;
> (6) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out *an individual with a disability or a class of individuals with disabilities* unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity; and
> (7) failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to *a job applicant or employee who has a disability* that impairs sensory, manual, or speaking skills, such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking

11

forbids association discrimination, before considering whether to look to the ADA or case law thereunder for guidance.

Like the NMHRA, Title VII does not include an express prohibition on discrimination on the basis of association. Rather, Title VII states: "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's* race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1) (emphasis added).  This language is arguably more circumscribed to the individual employee than the NMHRA's indiscriminate "*because of* race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition." Section 28-1-7(A) (emphasis added).  Thus far, neither the Supreme Court nor our Tenth Circuit have considered whether Title VII forbids association discrimination.[6]  However, every Circuit that has addressed the question has held that Title VII forbids association discrimination.  *See, e.g., Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986) (concluding that employees must be protected from discrimination based

---

skills of *such employee or applicant* (except where such skills are the factors that the test purports to measure).
42 U.S.C. § 12112(b).

[6] In an unpublished decision by our Tenth Circuit, the Court did not have to address the issue of whether the ADA prohibits discrimination based on a female employee's "association with a male friend of Mexican national origin." *Purdy v. United Airlines, Inc.*, 176 F.3d 489, 1999 WL 190529, *1 (10th Cir. 1999) (unpublished decision). Without pointing out the existence of the legal issue of whether Title VII forbids discrimination on the basis of association, the Court held that the plaintiff "failed to show that defendants' actions were pretextual" and thus the district Court did not err in granting summary judgment. *Id.* at *2.

upon their interracial marital status to be consistent with the purpose of Title VII and its

liberal construction; determining that associational race discrimination is discrimination

based on the employee's race); *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2nd Cir. 2008)

("[W]here an employee is subjected to adverse action because an employer disapproves

of interracial association, the employee suffers discrimination because of the employee's

*own* race." (emphasis in original)); *Tetro v. Elliot Popham Pontiac, Oldsmobile, Buick &*

*GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999) ("A white employee who is

discharged because his child is biracial is discriminated against on the basis of his race,

even though the root animus for the discrimination is a prejudice against the biracial

child."); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir.

1998) (concluding that "Title VII prohibits discrimination in employment premised on an

interracial relationship") *vacated in part on other grounds by Williams v. Wal-Mart*

*Stores, Inc.*, 182 F.3d 333 (5th Cir. 1999); *see also Drake v. 3M*, 134 F.3d 878, 884 (7th

Cir. 1998) (in considering race association discrimination case, assuming Title VII

prohibits such discrimination and analyzing whether claim of discrimination based on

friendship with minority co-workers established discrimination based on plaintiff's race);

*Patrick v. Miller*, 953 F.2d 1240, 1249-50 (10th Cir. 1992) (favorably citing *Parr* and

concluding that it was well established that 42 U.S.C. § 1981 forbids discrimination

against a "white person because of his association with black persons").  This Court

predicts that the New Mexico Supreme Court would be persuaded by the analysis and

reasoning in the above cases, along with the general weight and trend of the authority.

Because the more circumscribed language of Title VII has been consistently held to

forbid association discrimination, the Court predicts that the New Mexico Supreme Court would hold that the broader language of the NMHRA also forbids against association discrimination.  *See Elane Photography, LLC v. Willock*, 309 P.3d 53, 62 (N.M. 2013) (concluding that the Legislature broadly defined discrimination under the NMHRA).

This conclusion is bolstered by the New Mexico Supreme Court's interpretation of the NMHRA by looking to federal courts' analysis of the ADA, despite the differences in the language of the two statutes.  *See Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 338-39 (N.M. 2001) (applying the ADA's definition and related case law considering the definition of a disability, where the plaintiff alleged he was terminated under the NMHRA based on a medical condition; concluding that the plaintiff did not establish a medical condition as defined by the NMHRA based on the short temporal duration of the plaintiff's condition).  Despite the textual differences between the NMHRA and the ADA, there is good reason to believe that the New Mexico Legislature intended the NMHRA to grant the same degree of protection now recognized by the ADA.  "The ADA's definition of disability is drawn almost verbatim from the definition of 'handicapped individual' included in the Rehabilitation Act of 1973."  *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).  *See also Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1102 (10th Cir. 1999) ("Because the language of disability used in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge.").  There are clear similarities between the NMHRA and the Rehabilitation Act of 1973, which, at the time it was adopted, prohibited discrimination against "otherwise qualified handicapped individual[s] . . . under any

program or activity receiving federal financial assistance." P.L. 93-112, Sec. 504. Given this legislative history as well as the precedential analysis of all three statutes, this Court concludes that, even after scrutinizing the textual differences between the NMHRA and the ADA, the New Mexico Supreme Court would determine that the New Mexico Legislature intended the NMHRA to prohibit disability association discrimination to the same extent that the ADA prohibits disability association discrimination.

**CONCLUSION**

**IT IS THREFORE HEREBY ORDERED** that *Defendant Easter Seals El Mirador's Motion to Dismiss and Supporting Memorandum of Law* [Doc. 22] is **DENIED.**

**IT IS SO ORDERED** this 27th day of January, 2015 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court