**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JOHN DEPAULA,
                    Plaintiff,

v.                                                                     Civ. No. 14-252 MCA/SCY

EASTER SEALS EL MIRADOR,
*a corporation*,
                    Defendant.

## ORDER

This matter is before the Court on the Foundation of the Knights Templar's ("FOKT") motion to quash the subpoena served upon it by Plaintiff John DePaula. *Doc. 69*.[1] Plaintiff opposes the motion. *Doc. 81*. The Court has read and considered the parties' briefing, including FOKT's reply (*Doc. 84*), FOKT's supplemental response (*Doc. 99*), and Plaintiff's sur-reply (*Doc. 103*). Because FOKT has not demonstrated that there is good cause to quash Plaintiff's subpoena in its entirety, the Court will deny FOKT's motion.

### I.        Background

Defendant Easter Seals El Mirador is a nonprofit corporation that employed Plaintiff John DePaula from 1990-2012. Defendant maintains that it terminated Plaintiff in 2012 "to achieve cost containment necessitated by a severe financial crunch." *Doc. 69* at 2; *Doc. 81* at 1. Plaintiff disagrees. He believes Defendant's financial troubles are a pretext and that he was, in fact, wrongfully terminated because of his age, gender, and decision to take family medical leave from work. *Doc. 21*. To support these claims, he has sought information throughout discovery regarding Defendant's financial situation.

Plaintiff's search has revealed that Defendant has a close relationship with FOKT and

---

[1] This motion is titled "Defendant Easter Seals El Mirador's Motion to Quash . . ." However, at a telephonic status conference, Defense counsel clarified that she was filing the motion on behalf of FOKT and was representing FOKT for the limited purpose of challenging the subpoena. *Doc. 97*.

that FOKT has contributed money and/or resources to Defendant in the past. Specifically, Plaintiff has alleged in its response that: (1) prior to 1997, FOKT actively provided services to individuals with developmental disabilities; (2) in 1997, FOKT transferred the majority of its assets to Defendant; (3) at that time, FOKT adopted the role of supporting Defendant, primarily through the purchase and rental of facilities; (4) FOKT's bylaws provide that FOKT was formed "in particular" to support Defendant; (5) FOKT's bylaws require it to share one member of its Board of Directors with Defendant's Board of Directors; and (6) FOKT's New Mexico Charitable Organization Registration Statements list Mark Johnson, Defendant's CEO, as FOKT's CEO. *Doc. 81* at 2-5.

During his deposition, however, Mark Johnson denied that he worked for or had helped create FOKT. *Doc. 69*, Ex. A at 187:7-20. He explained that while FOKT has contributed money to Defendant in the past and while part of FOKT's mission is to fund Defendant, *id.* at 185:20-186:11, FOKT and Defendant are separate legal entities, governed by separate boards of directors, *id.* at 120:20-24. He emphasized the FOKT is not legally required or otherwise obligated to "gift, grant, or issue" money to Defendant. *Id.*

On April 24, 2015, Plaintiff issued a subpoena to FOKT requesting: (1) Board of Director's minutes from 2009 to present, (2) Finance Committee minutes from 2009 to present, (3) records of payments between FOKT and Defendant from 2009 to the present, (4) records of any payments FOKT made to Mark Johnson and Patsy Romero (Defendant's employees) from 2009 to present, (5) FOKT's corporate documents, and (6) documents showing FOKT's relationship with Mark Johnson, including any employment contracts. *Doc. 99*, Ex. A. FOKT moved to quash this subpoena on the bases that (1) the requested documents are not relevant to Plaintiff's claims and (2) the subpoena places an undue burden on FOKT, a nonparty nonprofit

with limited staff and resources. The Court will address each contention below.

## II.     FOKT's Relevance Objection

It is well-settled that the scope of discovery under Federal Rule of Civil Procedure 45, which governs the issuance of subpoenas to nonparties, is the same as the scope of discovery under Rule 26(b) and Rule 34. *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw*, 211 F.R.D. 658, 662 (D. Kan. 2003) ("[T]he court must examine whether a request contained in a subpoena . . . seeks irrelevant information under the same standards as set forth in Rule 26(b)"). Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The scope of discovery under Rule 26 is broad. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). Rule 26 encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *City of Wichita v. Aero Holdings, Inc.*, 192 F.R.D. 300, 301 (D. Kan. 2000) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Here, FOKT generally argues that information about its relationship with Defendant and its finances and contributions to Defendant are irrelevant because it is a separate legal entity from Defendant and is not obligated to provide money to Defendant. Whether FOKT is a separate legal entity not obligated to provide money to Defendant (facts Plaintiff seeks to learn through the discovery requests) is not dispositive. Plaintiff seeks information about FOKT's contributions to Defendant to show that Defendant's claimed reason for firing Plaintiff – financial difficulties – was a pretext. Regardless of whether FOKT was *obligated* to provide

3

money to Defendant evidence that Defendant *expected* Defendant to provide it with money is relevant to whether Defendant terminated Plaintiff because it determined that it could no longer pay his salary. Similarly, the nature of the relationship between Defendant and FOKT is relevant because it bears on whether Defendant expected FOKT to provide it money. Further, as Plaintiff points outs, the information Plaintiff has requested about the relationship between Mark Johnson and FOKT is relevant to Mr. Johnson's credibility.[2] *Doc. 81* at 12-13. In his deposition, Mr. Johnson denied working for FOKT. If FOKT documents contradict this testimony, information from those documents could be used to impeach Mr. Johnson at trial. Further, if Mr. Johnson held a position with FOKT that allowed him to influence the flow of money from FOKT to Defendant, or to obtain inside knowledge about funds FOKT planned to provide Defendant, Mr. Johnson's expectation of additional funding would bear on whether his purported reason for dismissing Plaintiff was pretextual.  Because the Court is not persuaded by FOKT's only relevance argument[3] – that no information about its relationship with Defendant is discoverable – the Court will deny the request to quash the subpoena on this basis.

### III.    FOKT's Undue Burden Argument

Pursuant to Rule 45, the Court must quash a subpoena served on a nonparty if the subpoena would subject that party to undue burden. Fed. R. Civ. P. 45(d)(3)(A). Deciding what constitutes an undue burden is committed to the sound discretion of the district court. *See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 669 F.2d 620, 623

---

[2] In response to this argument, FOKT asserts that information about the relationship between Mark Johnson and FOKT is duplicative because "[w]hatever information Plaintiff thinks he has regarding Mr. Johnson's credibility as a witness is evidently already in his possession." *Doc. 84* at 6. The Court disagrees. If Mr. Johnson had an employment contract with FOKT, this information could potentially be relevant at trial given Mr. Johnson's role in firing Plaintiff. Online entries that suggest Mr. Johnson may be affiliated with FOKT are not duplicative of an employment contract showing his exact relationship, if any, with FOKT.

[3] FOKT has not argued that the Court should quash part of the subpoena or that some, but not all, of the information sought is irrelevant. Thus, the Court will not individually address the relevance of each category of information listed in the subpoena.

(10th Cir. 1982); *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003). In making this determination, courts "examine a number of factors on a case-by-case basis, including relevance of requested items, the need for the items, the breadth of the request, and burden or expense imposed." *Robinson v. City of Arkansas City*, No. 10-1431, 2012 U.S. Dist. LEXIS 23806, at *70 (D. Kan. Feb. 24, 2012). The court must balance "the burden imposed upon the responding party if a protective order is not granted as compared with the burden imposed upon the requesting party if a protective order imposing conditions is granted." *Antitrust Litigation*, 669 F.2d at 623. Ultimately, however, the party "seeking to quash a subpoena carries the burden to show undue burden." *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (under Rule 45, the movant carries the burden of proof).

In this case, FOKT insists that Plaintiff's subpoena should be quashed because the information sought has no relevance and FOKT has no staff at hand to produce the documents. FOKT estimates that responding to the subpoena would cost $3,500 and require at least 100 hours of work from outside staff. The Court has already explained why it disagrees with FOKT's assessment of the relevance of the documents Plaintiff has requested. Further, some of the information Plaintiff requests is information FOKT is required by law to have available. *See* NMSA 1978 § 53-8-27 (requiring non-profits to maintain complete books and records of account and minutes of proceedings). Thus, these documents should not be overly difficult to collect and, therefore, the Court does not find FOKT's argument regarding the burden of producing these documents convincing. Additionally, the Tenth Circuit has admonished that "[a] party seeking to quash a subpoena duces tecum has a particularly heavy burden as contrasted to a party seeking only limited protection." *Antitrust Litigation*, 669 F.2d at 623. Because Plaintiff's subpoena seeks information that is moderately, although not highly, relevant to his claims and FOKT

5

should have most of this information already cataloged, the Court will not quash the subpoena in its entirety.

FOKT also contends that the subpoena is overly burdensome because it seeks duplicative information already available to Plaintiff, such as Articles of Incorporation and bylaws. Plaintiff responded that he asked for certain records without excluding documents available online because he thought "it would be more difficult to cull out specific documents than to merely produce the category of documents." *Doc. 81* at 10. In order to accommodate FOKT's concern, however, the Court will allow FOKT to either (1) respond to the subpoena as written or (2) exclude all publically available documents from its production, whichever is less costly.

FOKT does not make any other specific argument about why the subpoena would be burdensome to answer or whether there are specific categories of documents that are more expensive to collect and review. In their supplemental reply, FOKT mentions that the subpoena seeks documents covering a period of seven years, including years that predate Plaintiff's termination. *Doc. 99* at 1-2. A cursory review of the case, however, does not suggest that this time period is unreasonable. Defendant has represented that it was not in financial crisis prior to 2010. *Doc. 93* at 7. Therefore, documents showing the financial relationship between FOKT and Defendant immediately before and after this period, including at the time of Plaintiff's termination, would appear to have relevance. The Court will not limit the time periods listed in the subpoena. Nor will the Court *sua sponte* impose any other limitation on Plaintiff's subpoena. While the Court is cognizant of FOKT's nonprofit status and the Court's duty to protect non-litigants from undue burden, FOKT has not explained how the subpoena could be limited (but not entirely quashed) so as to reduce the burden on FOKT without depriving Plaintiff of the

opportunity to garner relevant information about the close financial relationship between FOKT and Defendant.

In light of FOKT's lack of staff and nonparty status, the Court will, however, require Plaintiff to split the cost with FOKT of collecting any documents that FOKT is not required to maintain as a matter of state law under NMSA § 53-8-27.

**IT IS ORDERED THAT:**

1. FOKT's Motion to Quash is DENIED.

2. Unless Plaintiff chooses to withdraw part of its subpoena, Plaintiff must reimburse FOKT for half of the cost FOKT incurs collecting any documents that it is not required to maintain as a matter of state law under NMSA § 53-8-27.

3. If there is any dispute regarding the amount of such costs, the parties shall file a joint motion with the court explaining how much money FOKT is requesting and any objections Plaintiff has to this amount. FOKT shall attach to this motion any receipts, affidavits, or other evidence to support the amount requested.

4. In responding to Plaintiff's subpoena, FOKT may exclude all publically available documents if this is more cost effective.


STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE