IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN DEPAULA,

    Plaintiff,

v.                                                         Civ. No. 14-252 MCA/SCY

EASTER SEALS EL MIRADOR,
*a corporation*,

    Defendant.

## ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents. *Doc. 86*. Having reviewed the Motion and the accompanying briefs (*Docs. 93, 100*), the Court will grant Plaintiff's Motion in part and deny the Motion in part as further described below.

    **I.**     **Background**

In this employment discrimination lawsuit, Plaintiff alleges that Defendant Easter Seals El Mirador[1] reduced his salary in March 2012 and eventually terminated his position in June 2012 because of his gender, age, and decision to take family medical leave to care for this elderly parents. *See generally doc. 21*. Defendant denies these allegations and maintains that it fired Plaintiff as part of a financial and budgetary crisis. *Doc. 93* at 2-3.

    **II.**     **Analysis**

Plaintiff asks the Court to enter an order compelling Defendant to fully respond to Plaintiff's Interrogatories (ROGs) 20, 24, and 25 as well as Plaintiff's requests for productions (RFPs) 1, 16, 18, 19, and 20. *See generally Doc. 86*. Defendant has asserted attorney-client privilege and relevance objections to the ROGs. As for the RFPs, Defendant does not dispute

---

[1] The parties commonly refer to Defendant as "ESEM."

1

their propriety, but claims that it has fully answered these RFPs by providing all documents within its control or possession. The Court will address each of these issues in turn.

### A. ROG 20

Plaintiff's ROG 20 inquires whether Defendant consulted "with an attorney about any termination and/or separation of any . . . employee within the last 5 years" and asks Defendant to "identify each employee whose termination and/or separation was the basis for a consultation with an attorney" and explain why this employee was fired. *Doc. 86*, Ex. A at 19. Defendant refused to answer this interrogatory on the basis that the interrogatory sought attorney-client privileged information. "The attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal citation omitted).

Plaintiff contends that the information he seeks via ROG 20 is not attorney-client privileged because revealing information about when Defendant consulted with an attorney does not reveal the substance of any attorney-client communications. As an alternative to immediate disclosure, Plaintiff argues that the Court should require Defendant to create a privilege log showing the date and time of each communication it had with counsel about the termination and/or separation of an employee, including the name of the employee. *Doc. 100* at 12. The Court rejects both of Plaintiff's arguments.

Plaintiff is correct that the attorney-client privilege "extends . . . only to the substance of matters communicated to an attorney in professional confidence," not the mere existence of such communications. *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974); *see also United States v. Alexander*, No. 93-3465, 1994 U.S. App. LEXIS 28325 (7th Cir. Oct. 7, 1994) (a

2

criminal defendant's telephone records showing times of calls to his attorney were not protected by the attorney-client privilege). Plaintiff, however, has not asked Defendant to just state when it consulted with an attorney. Instead, Plaintiff has requested that Defendant reveal the substance of its communications with counsel – namely, whether Defendant discussed with an attorney the subject of terminating *a particular employee*.  Plaintiff's request is tempered in that it does not request Defendant to identify communications that involved an employee who was not ultimately terminated or separated.  Nonetheless, by asking Defendant to identify the employees who were the subject of the communication with the attorney, the request goes beyond non-privileged generalities regarding the existence of any attorney-client communications.

      Plaintiff's alternative request for a privilege log fares no better. Federal Rule of Civil Procedure 26(b)(5)(A) provides that a party who withholds privileged information that is otherwise discoverable must (1) expressly make the claim of privilege and (2) describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing the privileged or protected information itself, will allow other parties to assess the claim. FED. R. CIV. P. 26(b)(5)(A). In accordance with this Rule, when a discovery request covers both privileged and non-privileged documents, the responding party must provide the non-privileged documents and create a privilege log identifying those documents in which a claim of privilege is being asserted. *See White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1267-68 (D. Kan. 2008) ("The party who withholds discovery materials must provide sufficient information, usually in the form of a privilege log, to enable the other party to evaluate the applicability of the privilege or protection."). The purpose of the privilege log is to separate non-privileged documents from privileged documents and, *without revealing privileged communications*, to provide the requesting party sufficient

3

information to assess the privilege claims. Here, Defendant is asserting attorney-client privilege with regard to *all* the documents requested. Furthermore, ROG 20 requests privileged attorney-client communications by its own terms. Thus, a privilege log is not needed to identify the documents Defendant claims are privileged or to assess whether these documents are, in fact, privileged.

In this case, requiring Defendant to produce a privilege log with the information Plaintiff has requested would simply serve as a backdoor for releasing information that the Court has ruled is protected by the attorney-client privilege. In ROG 20, Plaintiff asks whether certain substantive attorney-client communications occurred. Plaintiff has demanded that Defendant either provide this information directly or produce a privilege log listing when these protected communications occurred, thereby providing the same information indirectly. For all of the above stated reasons, the Court rejects Plaintiff's request to order Defendant to provide a privilege log.

### B.  ROGs 24-25

Plaintiff's ROGs 24-25 seek information about payments Defendant made to other employees within the last ten years. ROG 24 states: "Please set forth the date and the amount of each bonus given to any member of the ESEM Senior Management Team in the last ten years." ROG 25 states: "Please describe the profit-sharing distribution methodology along with actual distribution figures for ESEM's CEO and Senior Managers and the private retirement contributions, including the total amount in the retirement account for ESEM's CEO." Defendant provided partial answers to these interrogatories for the last five years (2010 to

present).[2]

Under Federal Rule of Civil Procedure 26(b), subject to court-oversight, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). The scope of discovery under this Rule is broad. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). The word "relevant" encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *City of Wichita v. Aero Holdings, Inc.*, 192 F.R.D. 300, 301 (D. Kan. 2000) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The exchange of relevant discovery is, however, always regulated by the court. To protect the parties and reduce litigation expenses, the court will limit discovery that is cumulative, excessive, or overly burdensome. FED. R. CIV. P. 26(b)(2)(C).

Plaintiff maintains that information about profit-sharing and bonuses from 2005 to 2010 is relevant to assess Defendant's financial state in 2012 and to show that Defendant's alleged reason for terminating Plaintiff – cost-savings – was a pretext. *Doc. 86* at 7-8; *Doc. 100* at 10-11. While Defendant provided information from 2010 forward, it refused to provide information about bonuses and profit-sharing for the years 2005-2009. Defendant argues that its financial difficulties began in 2010 and information sought prior to 2010, therefore, is irrelevant. *Doc. 93* at 7-8. Plaintiff counters that he is "not required to accept ESEM's unsupported, conclusory opinions" on this matter. *Doc. 100* at 11. Plaintiff also asserts that he received a bonus in 2008 or 2009 and that CEO Mark Johnson received a significant bonus in 2009. *Doc. 86* at 7.

---

[2] Plaintiff expresses some confusion about whether Defendant was providing information for the calendar year: January 1, 2010 through present, or, July 1, 2010 through present. The Court orders Defendant to update its responses to ROGs 24-25 to clarify this matter.

It is clear that Defendant's financial state in 2012 is relevant. What is not clear, however, is how bonuses and profit-sharing before 2010 bear on Defendant's financial state in 2012. If pre-2010 bonuses and profit sharing was excessive, this could explain Defendant's purported 2012 financial problems. But the cause of Defendant's purported financial problems is not at issue in this case.

If Defendant issued significant bonuses and engaged in significant profit sharing before 2010, an inference is created that Defendant did not have severe financial difficulties prior to 2010. Had Defendant terminated Plaintiff in 2009 or before, this would then be relevant to whether Defendant's stated reason for terminating Plaintiff (financial difficulties) was a pretext. But Defendant did not terminate Plaintiff in 2009 or before; it terminated Plaintiff in 2012. Further, in an effort to establish Defendant's financial condition in 2012, Plaintiff asked Defendant to provide tax information only going back to 2010. *Doc. 86* at 9. If it is true that pre-2010 bonus and profit sharing information is relevant to Defendant's financial status in 2012, then it is odd that Plaintiff did not also request Defendant's pre-2010 tax records.

The Court finds that Plaintiff has failed to support his contention that bonuses and profit sharing information prior to 2010 are relevant to Defendant's financial status in 2012. The Court further finds that, upon its own examination, information about Defendant's pre-2010 profit-sharing and bonuses has no obvious connection to the reasons Defendant fired Plaintiff in 2012. Moreover, to the extent that pre-2010 financial information could be construed as having slight relevance, the Court finds that the burden of providing this information, including the burden caused by providing private financial information, outweighs its likely benefit so that discovery is barred under Rule 26(b)(2)(C).

Plaintiff also contends that pre-2010 information about profit-sharing and retirement

6

benefits is necessary to calculate Plaintiff's damages. *Doc. 86* at 8. Plaintiff does not, however, explain why this is so, or how such information would factor into a damages calculation. The Court assumes that Plaintiff is contemplating using this information to compute his lost wages, back pay, and/or front pay. Under the facts of this case, calculation of these values would largely be based on Plaintiff's prior rate of remuneration, with potential consideration of the average bonuses and other benefits paid to similarly situated employees after Plaintiff's termination (to account for fluctuations in the labor market and financial health of Defendant). Pre-2010 information about profit sharing is not targeted to provide evidence in either of these areas. The only relevant information it may reveal is information about bonuses and profit-sharing paid to Plaintiff. The Court orders Defendant to disclose information about bonuses and profit-sharing that relate to Plaintiff only, from 2008 through 2012.

Plaintiff also faults Defendant for withholding information about the retirement account of Defendant's CEO, Mark Johnson. Plaintiff argues that "[t]he total amount in CEO Mark Johnson's retirement account has a direct bearing on the outcome of this matter" because "a jury would be entitled to examine the evidence of discretionary contributions by ESEM to its CEO at a time when ESEM's alleged financial situation was so dire that it could not afford to continue paying Plaintiff's salary." *Doc. 100* at 11. The Court disagrees. The total amount in Mr. Johnson's retirement account does not shed any light on whether Defendant made discretionary contributions to the account during Defendant's alleged financial crisis or whether Defendant's reason for firing Plaintiff was a pretext. Because the burden of providing the discovery requested, including the burden caused by providing private financial information, outweighs its likely benefit, the Court will not order Defendant to disclose this amount.

Plaintiff's argument about the relevance of discretionary (non-contractual) payments

made to Mr. Johnson's account during the 2010-2012 time period has merit. The Court is not clear, however, on whether Defendant has already provided this information. In response to ROG 25, Defendant states that "there is no profit-sharing plan available to Easter Seals El Mirador employees currently and no profit-sharing occurred for the years 2010 through the current date. There is a retirement 401-K plan, to which contributions were made in years prior to fiscal year 2010-2011." *Doc. 86*, Ex. A at 22. The Court orders Defendant to update its response to ROG 25 to clarify whether it is asserting that no retirement contributions were made from 2010 to 2012 to any employee, including Mr. Johnson, or whether Defendant is withholding information about contributions to Mr. Johnson's retirement account. If Defendant is withholding this information, the Court orders Defendant to disclose it.

The only other issue raised by Plaintiff in regard to ROGs 24-25 is Plaintiff's dissatisfaction with Defendant's mention of the 401-K plan. Plaintiff complains that Defendant's response to ROG 25 does not explain "ESEM's failure to contribute [to the 401-K plan] after FY 2010-2011 in light of the plan's continued existence." *Doc. 100* at 11. ROG 25 does not, however, require Defendant to provide this information. Thus, there is no legal basis for the Court to order Defendant to disclose the reasons it did not contribute to the 401-K post-2010. *See James v. Wash Depot Holdings, Inc.*, 240 F.R.D. 693, 695 (S.D. Fla. 2006) (a motion to compel must be tethered to the failure of the party from whom discovery is sought to make required disclosures or discovery under one of the Federal Rules of Civil Procedure).

### C. RFP 1

Plaintiff's RFP 1 asks Defendant to "produce complete copies of any and all documents described or referenced in ESEM's Answers to Plaintiff's First Set of Interrogatories, and any documents considered by, evaluated by or examined by ESEM in connection with responding to

Plaintiff's First Set of Interrogatories." *Doc. 86*, Ex. A at 22. Plaintiff contends that Defendant has not properly responded to this RFP because (1) Defendant provided an employee welfare plan description for 2012-2013, and not for the years 2008-2012 and (2) Defendant's supplemental response "appears to be incomplete as it does not identify the other documents ESEM has produced at all, much less by Bates numbers." *Doc. 86* at 9. In response, Defendant expresses confusion about Plaintiff's second argument. Defendant, however, generally represents that it has provided all information in its possession responsive to this request for production and explains that the 2012-2013 plan description it produced is "the earliest plan available" to Defendant. *Doc. 93* at 9.

In his reply, Plaintiff does not discuss the employee welfare plan description issue. Instead, Plaintiff alters his relief requested, asking for an order "requiring Defendant to identify responsive documents and to state under oath which specific documents do not exist." *Doc. 100* at 8. Defendant has already represented that "the roughly 600 pages of documents [disclosed] were identified by their corresponding Request for Production." *Doc. 93* at 9. As a result, the Court will not order Defendant to further identify responsive documents. Similarly, because Defendant has represented that it has fully responded to this RFP and Plaintiff has not produced any evidence to the contrary, the Court will not require Defendant to take any other action with regard to RFP 1.

### D. RFP 16

Plaintiff's RFP 16 asks Defendant to "produce copies of any and all filing by ESEM of any sort with the IRS and/or the New Mexico Taxation and Revenues Department, including but not limited to tax returns and extensions for the years 2010-2014." *Doc. 86*, Ex. A at 29. Defendant initially refused to provide the requested documents, but later supplemented its

response by providing "its internal financial statements for the years ending 2011 and 2012." *Id.* Plaintiff is correct that this answer is deficient as it does not address Plaintiff's request. In its response brief, Defendant explains that it provided internal financial statements, because it "has no other financial documentation in its possession responsive to this request." *Doc. 93* at 10. If this is true, Defendant should have made this clear in the supplemental discovery response by withdrawing its objection and affirmatively stating that it did not possess or have access to any of the documents requested (or that such documents did not exist, whatever the case may be). *See Norman v. Young*, 422 F.2d 470, 471-473 (10th Cir. 1970) (holding that the district court could presume the existence of concealed tax records and other normally-retained business documents, when the defendants failed to properly deny that the documents existed in writing).

Further, in his reply, Plaintiff claims that he has uncovered proof that Defendant has withheld responsive documents, specifically Form 990 tax returns for the years 2010-2012 (Plaintiff indicates that these returns were filed late, after 2014). The Court recognizes that Defendant has not had the opportunity to challenge Plaintiff's accusation and so will not address the merits of the allegation. The Court does note, however, that if Form 990 tax returns for the years 2010-2012 do exist, they are discoverable. As a result, the Court orders Defendant to immediately produce all documents within its control that are responsive to RFP 16 and to affirm under oath that it has done so.[3] *See id.* at 472-473 (a "party may not be compelled to produce papers or things which are not in his possession, custody, or control, or the possession, control, or existence of which the party denies under oath").

---

[3] The Court notes that RFP 16 is drafted in a way that leaves it susceptible to more than one interpretation. It asks Defendant to produce all tax documents filed with the IRS or New Mexico Revenue Department, including returns from 2010-2014. As worded, this would require the production of all tax documents Defendant has ever filed, including those from 2010-2014. Neither party appears to have given RFP 16 this interpretation, however. Plaintiff reads RFP as requiring the production of all tax documents filed during 2010-2014 as well as all tax documents associated with the years 2010-2014. The Court does not know how Defendant interpreted RFP 16, but adopts Plaintiff's interpretation.

### E.  RFP 18

In RFP 18, Plaintiff asked Defendant to produce "copies of the declaration pages and policies of insurance which were in effect during the calendar years 2011 through 2012, inclusive, through which ESEM might be insured in any manner for the damages, claims, or actions that have arisen out of the events alleged in Mr. DePaula's First Amended Complaint." *Doc. 86*, Ex. A at 29. Defendant claims it fully responded to this RFP, referencing, by Bates number, the portion of its initial disclosures that contained its insurance policy. *Id.* at 30. Plaintiff has two problems with this response: (1) Plaintiff wants Defendant to be ordered to produce a copy of an insurance policy Plaintiff believes was held by Foundation of the Knight Templar, an organization that provides financial support to Defendant and (2) Plaintiff wants to know the current balance on Defendant's insurance policy.

The Court will deny both requests. Defendant has represented that it has no other insurance policies in its possession that are responsive to Plaintiff's request. In light of this representation, the Court will not order Defendant to produce a third-party's insurance policy. *See Nkemakolam v. St. John's Military Sch.*, Case No. 12-2132-JWL-KGG, 2013 U.S. Dist. LEXIS 144392, at *6 (D. Kan. Oct. 7, 2013) ("The court cannot compel that which does not exist."). As for Plaintiff's second request, in RFP 18, Plaintiff did not ask Defendant to produce any information about the current balance of its insurance policy. Thus, the Court lacks any basis for ordering Defendant to produce this information. A motion to compel must be tethered to the failure of the party from whom discovery is sought to make required disclosures or discovery under one of the Federal Rules of Civil Procedure. *See James*, 240 F.R.D. at 695 (Rule 37 only allows a court to compel production of information based on a formal discovery request under

the Federal Rules of Civil Procedures).  Therefore, the Court denies Plaintiff's motion with regard to RFP 18.

### F.  RFP 19

Plaintiff's RFP 19 states "[p]lease provide copies of all ESEM Board Meeting Minutes from January 2009 to present." *Doc. 86*, Ex. A at 30. Like with RFP 16, Defendant initially refused to provide the requested documents, but later supplemented its response. *Id.* Defendant's supplemental response states "Defendant ESEM produces ESEM Board Meeting Minutes from January 2011 to July 2012." *Id.* Plaintiff naturally construed Defendant's supplemental response as providing only select board minutes, without any justification. In its response, Defendant clarified that it "has previously produced all ESEM board minutes to Plaintiff." *Doc. 93* at12. Defendant should have included this explanation in its supplemental response and perhaps avoided the present dispute. The Court will order Defendant to update its response to RFP 19 to state, under oath, that it has provided all board meeting minutes in its possession or control.

In addition to the above relief, Plaintiff asks the Court to order a deposition of Defendant's Board President or Secretary to allow Plaintiff to ask about the missing board minutes, which Defendant is required to maintain by law and according to its own bylaws. The Court agrees that it is unusual that Defendant would only have board meeting minutes for 2011-2012. The Court will allow Plaintiff to notice this deposition out of time if he desires.

### G.  RFP 20

The parties' dispute over RFP 20 follows the same pattern as the dispute over RFP 19. Plaintiff asked for Senior Staff Meeting Minutes from January 2009 to present; Defendant originally refused to provide this material, but later updated its response stating that it was providing minutes from 2010 to present. *Doc. 86*, Ex. A at 30. Plaintiff asks for a complete

response and/or a statement under oath that all minutes have been produced. *Doc. 86* at 14. Plaintiff expresses concern that some minutes have been withheld, such as minutes from an April 19, 2012 meeting that was provided at the deposition of Defendant's CEO. *Doc. 100* at 7-8. Because Defendant has not contested the relevance or discoverability of Senior Staff Meeting Minutes, Defendant must produce all minutes in its possession or update its response to state that all minutes that are in its possession have already been provided.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion to Compel (*Doc. 86*) is granted in part and denied in part.
2. In accordance with this order, Defendant must update its discovery responses to ROGs 24-25 and RFPs 16, 19-20 by September 4, 2015.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE